⊗JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Minnesota Lawyers Mutual Insurance Company

(b) County of Residence of First Listed Plaintiff **Hennepin County**
(EXCEPT IN U.S. PLAINTIFF CASES)   MN

(c) Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS
C. William Kenny, Esquire
Tarasi, Tarasi & Fishman, P.C., Tarasi & Tarasi, PC

County of Residence of First Listed Defendant **Allegheny County**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332 and 28 U.S.C. 2201

Brief description of cause: Declaratory Judgment action on professional liability policy

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 0

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 9-4-09

SIGNATURE OF ATTORNEY OF RECORD _[signature]_

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY,

   Plaintiffs,

vs.

C. WILLIAM KENNY, ESQUIRE,
TARASI, TARASI & FISHMAN, P.C.
TARASI & TARASI, P.C., and JANICE
AND ROBERT SAHUTSKY,

   Defendants.

CIVIL DIVISION

No.:

**COMPLAINT FOR
DECLARATORY JUDGMENT**

## COMPLAINT FOR DECLARATORY JUDGMENT

AND NOW, comes Plaintiff, Minnesota Lawyers Mutual Insurance Company, by and through Burns, White & Hickton, LLC, and John B. Cromer, Esquire, and files this Complaint for Declaratory, Judgment as follows:

### PARTIES

1. Minnesota Lawyers Mutual Insurance Company (hereinafter "MLM") is a Minnesota Corporation with a principal place of business at 333 South 7th Street, Suite 200, Minneapolis, Minnesota 55402.

2. Defendant, C. William Kenney (hereinafter "Kenny"), is an adult individual, a resident of the Commonwealth of Pennsylvania, and an attorney for Defendant, Tarasi & Tarasi, P.C., whose principal place of business is located at 510 Third Avenue, Pittsburgh, Pennsylvania 15219.

4. Defendant, Tarasi, Tarasi & Fishman, P.C., now known as Tarasi & Tarasi, P.C. (hereinafter "Tarasi") was a Pennsylvania Professional Corporation with a principal place of business at 510 Third Avenue, Pittsburgh, Pennsylvania 15219.

5. Defendants, Janice and Robert Sahutsky, hereinafter (Sahutsky) are adult individuals and with a residence in Northumberland County in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

6. Jurisdiction is based on 28 U.S.C. § 1332 because the parties have diverse citizenship and the amount in controversy exceeds $75,000.00.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) due to a substantial part of the events or omissions giving rise to the claim occurring in this District.

## DECLARATORY JUDGMENT RELIEF

8 This Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201, is sought with regard to an insurance coverage controversy concerning Tarasi's MLM Claims-Made Lawyers Professional Liability Insurance Policy, policy period from May 31, 2006 to May 31, 2007, and a lawsuit brought by the Sahutsky's against Tarasi and Kenny, currently pending in the Court of Common Pleas of Northumberland County, at CV07-2240, alleging professional negligence and a breach of fiduciary duty.

## THE PRESENT UNDERLYING ACTION (Sahutskys v. Tarasi & Kenny)
## AND RESERVATIONS OF RIGHTS

9. On April 5, 2007, a Writ of Summons was filed by the Sahutsky's against Tarasi and Kenny followed by a Complaint being filed on May 2, 2007. A true and correct copy of the Complaint is attached hereto as Exhibit "A."

10. MLM was first put on notice of the Sahutsky's claim in April, 2007. A true and correct copy of the notice letter and attachments is attached hereto as Exhibit "B."

11. Thereafter, on May 4, 2007, MLM entered a defense for Tarasi and Kenny in the Sahutsky lawsuit and issued a Reservation of Rights letter, a true and correct copy attached hereto as Exhibit "C," reserving MLM's rights pursuant to the LAWYERS PROFESSIONAL LIABILITY INSURANCE CLAIMS-MADE POLICY, policy period May 31, 2006 to May 31, 2007, due to the insureds' prior knowledge of the Sahutsky's claim prior to the effective date, May 31, 2006, of the claims-made policy.

12. On June 13, 2007, a supplemental Reservation of Rights letter to Tarasi and Kenny was sent by MLM, a true and correct copy attached hereto as Exhibit "D", reserving MLM's rights under the MLM policy relative to the Sahutsky's allegations in their Complaint of false representations and/or knowingly misrepresenting the acts or omission of counsel.

13. On June 5, 2007, an Amended Complaint was filed by the Sahutsky's against Tarasi and Kenny. A true and correct copy of the Amended Complaint is attached hereto as Exhibit "E."

14. Thereafter, on July 10, 2007, MLM, after receipt of the Amended Complaint, issued a continued Reservation of Rights to Tarasi and Kenny. A true and correct copy of the continued Reservation of Rights is attached hereto as Exhibit "F."

15. Thereafter, on or about February 13, 2008, a Second Amended Complaint was filed by the Sahutsky's against Tarasi and Kenny. A true and correct copy of the Second Amended Complaint is attached hereto as Exhibit "G."

16. Thereafter, on March 17, 2008, MLM, after receipt of the Second Amended Complaint, issued yet another continued Reservation of Rights to Tarasi and Kenny. A true and correct copy of the continued Reservation of Rights is attached hereto as Exhibit "H."

17. On November 17, 2008, the Second Amended Complaint filed by the Sahutsky's was, yet again, amended via Order of Court. A true and correct copy of the Amendment is attached hereto as Exhibit "I".

18. Thereafter, MLM on January 29, 2009, after receipt of the Amendment to the second Amended Complaint, issued yet another continued reservation of Rights to Tarasi and Kenny. A true and correct copy of the continued Reservation of Rights, attached hereto as Exhibit "J".

19. The lawsuit brought by the Sahutsky's against Tarasi and Kenny (hereinafter "the underlying suit"), is pending in the Court of Common Pleas of Northumberland County at CV07-2240 (after an Order of Court transferred the suit to Northumberland County from Philadelphia County).

20. In sum, the underlying suit alleges Tarasi and Kenny committed professional negligence and breached a fiduciary duty to the Sahutsky's with regard to Tarasi and Kenny's representation of the Sahutsky's in a legal malpractice action brought against the Sahutsky's former attorneys, Mychak, Geckle & Walker, P.C., Joseph T. Thiroway, Esquire, and Patrick G. Geckle, Esquire (hereinafter "MG&W").

## CLAIMS-MADE LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY APPLICATIONS AND FIRM INFORMATION VERIFICATION

21. In 2004, specifically on April 6, 2004, Mary E. Holman, Secretary/Treasurer of Tarasi, submitted a Renewal Application for Lawyers Professional Liability Insurance to MLM. A true and correct copy is attached hereto as Exhibit "K".

22. In the 2004 Application, the following question is asked and answer given:

> "Is any firm member aware of any INCIDENT that COULD REASONABLY result in a claim being made against the applicant, its predecessors or any past or present firm members?"
>
> The answer was "No."

23. The 2004 application states that a "claim" is "A DEMAND OR SUIT RECEIVED BY THE INSURED FOR MONEY OR SERVICES. IT ALSO MEANS ANY INCIDENT WHICH COULD REASONABLY SUPPORT SUCH A DEMAND OR ANY COMMUNICATION OR NOTICE TO THE INSURED OF A POTENTIAL CLAIM."

24. The 2004 Application provides that a reasonable inquiry has been made within the firm to obtain confirmation that the answers contained are true, correct and complete to the best of the applicant's knowledge and belief.

25. The 2004 Application provides that the applicant certifies that all known claims and all known incidents which might become a claim have been reported to the present or previous insurance carriers and the applicant has no knowledge of any threatened litigation or existing fact or situation which could result in a claim being filed against the applicant.

26. The 2004 Application goes on to state that the "failure by the applicant to report any known claims, or any known facts which may result in a claim, to the current or previous insurers may result in the declination of coverage for these matter by current or previous insurers."

27. Finally, the 2004 Application contains a statement wherein Tarasi confirms that the Application is being submitted by an authorized representative of the law firm.

28. On April 1, 2005, Louis N. Tarasi, Jr., President and Managing Partner of Tarasi, executed and submitted a Renewal Application to MLM. A true and correct copy is attached hereto as Exhibit "L."

29. In the 2005 Application, the following question is asked and answer given:

> "Is any firm member aware of any INCIDENT that COULD REASONABLY result in a claim being made against the applicant, its predecessors or any past or present firm members?"
>
> The answer was "No."

30. The 2005 Application contains the same definition, certifications and statements that were present in the 2004 Application as referenced above in paragraphs 22 through 26.

31. On April 10, 2006 Louis N. Tarasi, Jr., President and Managing Partner of Tarasi, signed and submitted a Firm Information Verification to MLM. A true and correct copy is attached hereto as Exhibit "M."

32. In the Firm Information Verification, Tarasi placed a check mark by a paragraph which states:

> "There have been changes to the firm name or schedule of lawyers, significant changes to the previously submitted application for information or the firm is aware of a claim(s) or circumstances that could reasonably result in claims or disciplinary actions that have not been reported to Minnesota Lawyers Mutual Insurance Company. As a result, I understand that the enclosed premium quotation is not valid. The undersigned will provide immediate notification on this form or on an attachment describing the changes to Minnesota Lawyers Mutual Insurance Company **before accepting the quotation.**"

33. On this Verification form there was a reference beside the above-quoted check marked paragraph to "SEE ABOVE."

34. Above, under the Schedule of Lawyers, Attorney Mark Martini is crossed out.

35. There was no reference to any awareness of a claim or circumstances that could reasonably result in a claim anywhere on the Firm Information Verification.

36. Subsequent to the signing and submitting to MLM the Applications and Firm Information Verification, as set forth in paragraphs 21, 28 & 31, MLM issued LAWYERS PROFESSIONAL LIABILITY INSURANCE CLAIMS-MADE POLICY, with the policy at issue in this Complaint for Declaratory Judgment covering a policy period from May 31, 2006 to May 31, 2007.

## **THE POLICY**

37. At the time of notice to MLM of the underlying suit, April 2007, Tarasi had a Lawyer's Professional Liability Insurance Claims-Made Policy, effective May 31, 2006 to May 31, 2007. A true and correct copy is attached hereto as Exhibit "N".

38. Per the claims-made policy language, coverage is afforded for claims first reported to Minnesota Lawyers during the policy period or extended reported period, if the act, error or omission occurred during the policy period.

39. The policy also covers claims resulting from any act, error or omission which occurred prior to the policy period and on or after the prior acts retroactive date if the insured had no knowledge of facts which could reasonably support a claim at the effective date of this policy.

40. As defined in the policy, "CLAIM(S)" means:

   1. A demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

   2. A lawsuit served upon the INSURED seeking DAMAGES; or

   3. An act, error or omission by any INSURED which is not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

41. Other definitions of import include:

"DAMAGE(S)" means monetary judgments or monetary settlements. DAMAGES does not include any of the following:

   (1) any fine, penalty, or sanction imposed by law or otherwise, or the multiplied portion of any damages assessed against any INSURED imposed directly or vicariously, whether or not imposed by statute or common law;

   (2) punitive or exemplarily damages assessed against any INSURED, whether or not allowed by statute or common law;

   (3) any forfeiture, reduction, discount or return of professional fees earned or claimed

   (4) the portion of any award, judgment or settlement that does not compensate for loss;

(5) any order for restitution or other payment by a court, tribunal, or agency of government made in connection with the criminal conviction of any INSURED; or

(6) the sanction of an INSURED to pay any fine, penalty or sum adjudged as restitution for damage or harm caused by an INSURED or as reimbursement to a court, tribunal, or agency for its costs.

"INSURED" means and in that prior definition of damage means:

(1) the NAMES INSURED;

(2) any partner or employee of the NAMED INSURED at the time the CLAIM is reported for PROFESSIONAL SERVICES RENDERED;

   a. on behalf of the Named Insured; or

   b. prior to the relationship with the NAMED INSURED, subject to the prior acts retroactive date, if any;

(3) any former partner or employee for former acts, errors or omissions and PROFESSIONAL SERVICES on behalf of the NAMED INSURED;

(4) the errors, assigns and legal representatives of the NAMED INSURED in the event of the INSURED'S death, incapacity or bankruptcy to the extent that the INSURED would have been covered; and

(5) any lawyer who is acting as of counsel and;

   (a) is named and described in the application of counsel;

   (b) is performing PROFESSIONAL SERVICES on behalf of the NAMED INSURED.

"POLICY PERIOD" means the period from the effective date of the Policy to the expiration date or earlier termination date of the Policy. Policy period does not include any extended reporting period.

"PROFESSIONAL SERVICES", defined in the effective policy and reproduced on page 2 of exhibit "U", means legal or notary services for other, including, but not limited to, services as administrator, conservator or guardian, executor or personal representative, trustee, escrow agent, title insurance agent, mediator, arbitrator or other participant in a dispute resolution process.

42. The policy goes on to exclude from coverage the following:

(1) Any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions.

43. Within the policy there is a Representation in Application section which provides that the application for coverage is a part of the policy. By acceptance of the policy the insured agrees:

(1) The statement in the application are the representation of all INSUREDS;

(2) Such statements are material as this policy is issued in reliance upon the truth of such representations; and

(3) this policy embodies all of the agreement between the INSURED, MLM and/or our MLM agent.

### BACKGROUND AND TIMELINE OF TARASI AND KENNY'S REPRESENATION OF SHATUSKYS

44. The Sahutsky's obtained the services of Tarasi and Kenney to pursue a legal malpractice case against the Sahutsky's lawyers relative to a personal injury lawsuit that eminated from an incident at Knoebels Amusement Park (hereinafter "Knoebels") on July 1, 1992.

45. By way of background, the Sahutsky's hired the law firm of Mychak, Geckle & Welker, P.C. (hereinafter "MG&W") to represent them in the Knoebel's personal injury case.

46. The Court of Common Pleas of Northumberland Country, because of a lack of docket activity for almost three years after the filing of the Complaint against Knoebel's, granted Knoebel's Motion for Judgment Non-Pros, entered a judgment of *Non-Pros*, and dismissed the Plaintiff's claims with prejudice.

47. Appeals were finally exhausted by the Sahutsky's when the Pennsylvania Supreme Court, on October 26, 2001, upheld the trial court's Judgment of Non-Pros.

48. Thereafter, the Sahutsky's executed a Contingent Fee Agreement on April 29, 2002, with Tarasi.

49. The Sahutsky's, by and through Tarasi and Kenny, brought a legal malpractice suit against MG&W on July 19, 2002 alleging, among other things, the lack of docket activity and failure to pursue the case breached the appropriate standard of care for lawyers.

50. After the close of the pleadings in the legal malpractice suit against MG&W, MG&W's attorney served a set of Interrogatories and Request for Production of Documents on counsel for the Sahutsky's on January 3, 2003.

51. When no answers were forthcoming, MG&W's attorney filed a Motion to Compel Discovery dated April 11, 2003, and the Trial Court issued a Rule to Show Cause for Answer Only in response to MG&M's Motion to Compel.

52. The Sahutsky's, through counsel, did not respond to the Rule to Show Cause, and subsequently, the Trial Court issued an Order, dated May 20, 2003, directing the Sahutsky's to file full and complete answers and responses to Defendant's discovery within ten days.

53. The Sahutsky's, through counsel, did not comply with the Court Order and MG&W's attorneys filed a Motion for Sanctions on June 20, 2003.

54. On July 1, 2003, the Court granted MG&W's request for sanctions which included the granting of a judgment of *Non-Pros* against the Sahutsky's.

55. The Sahutsky's, through their same counsel, Tarasi and Kenny, filed a Petition for Relief from Judgment of *Non-Pros* on July 21, 2003.

56. On October 9, 2003, the Trial Court issued an order that denied the Sahutsky's Petition.

57. The Sahutsky's, through the services of Tarasi and Kenny, filed an appeal to the Superior Court.

58. On November 7, 2003, the Trial Court ordered appellants to file a concise statement of matters complained of on appeal within 14 days.

59. On December 11, 2003, the Trial Court entered an Order setting forth the trial court's opinion on why the Order of October 9, 2003, and the dismissal of the Sahustky's lawsuit against MG&W was legally correct.

60. On February 9, 2005, the Superior Court of Pennsylvania issued its decision, which quashed the Sahutsky's' appeal, because the appeal was filed more than thirty days after the entry of the Judgment Non Pros.

61. The Supreme Court of Pennsylvania heard this matter and vacated the Superior Court decision, thereby directing the Superior Court to review the case in accordance with the law that was set forth in the first <u>Sahutsky</u> (the "Knoebel's" case) decision.

62. On May 12, 2006, the Superior Court of Pennsylvania issued its decision, upon remand from the Supreme Court, affirming the Northumberland County Trial Court's ruling that a judgment of *Non-Pros* was appropriate.

63. After re-argument and reconsideration were requested by Sahutsky, and denied, the Supreme Court of Pennsylvania, on January 18, 2007, denied the Sahutsky's Petition for Allowance of Appeal.

64. Thereafter, pursuant to paragraph 8 of this Complaint for Declaratory Judgment, the Sahutsky's commenced its lawsuit against Tarasi and Kenny with the filing of a writ of summons on April 5, 2007.

## **DECLARATORY RELIEF**

65. The present claim and underlying suit was first reported to Minnesota Lawyers Mutual in April, 2007.

66. Reservations of Rights letters have been issued to Tarasi and Kenny reserving, among other things, MLM's right to deny coverage due to Tarasi and Kenny's prior knowledge of facts which could reasonably support a claim against them prior to the effective date of the May 31, 2006 policy period.

67. Tarasi and Kenny knew in July of 2003, or in any event, prior to May 31, 2006, that the court granted a Judgment of Non-Pros in favor of MG&W, as a sanction for failing to comply with an Order of Court requiring the submission of discovery answers.

68. Tarasi and Kenny knew in October of 2003, or in any event, prior to May 31, 2006, that the court denied a Petition for Relief from the Judgment of Non-Pros, relative to the sanction for failing to comply with an Order of Court requiring the submission of discovery answers.

69. Tarasi and Kenny knew in December 2003, or in any event, prior to May 31, 2006, that the trial court entered its Order setting forth the trial court's opinion on why the October 9, 2003 Order and grant of Judgment Non-Pros was legally correct relative to the dismissal of the MG&W lawsuit as a sanction for failing to comply with an Order of Court requiring the submission of discovery answers.

70. Tarasi and Kenny knew in April 2004 when the MLM policy renewal application was executed, wherein information was sought relative to any incidents that could reasonably result in a claim being made, that the dismissal of the MG&W lawsuit, as a sanction for failing to comply with an Order of Court requiring the submission of discovery answers, had occurred.

71. Tarasi and Kenny knew in February 2005, or in any event, prior to May 31, 2006, that the Superior Court quashed the appeal relative to the dismissal of the MG&W lawsuit because the appeal was filed more than thirty days after the entry of the Judgment Non-Pros.

72. Tarasi and Kenny knew in April 2005, when the MLM policy renewal application was executed, wherein information was sought relative to any incidents that could reasonably result in a

claim being made, that the dismissal of the MG&W lawsuit, as a sanction for failing to comply with an Order of Court requiring the submission of discovery answers, had occurred.

73. Tarasi and Kenny knew in April 2006, when the MLM firm information verification was executed, wherein information was sought relative to any claims or circumstances that could reasonably result in a claim being made, that the dismissal of the MG&W lawsuit, as a sanction for failing to comply with an Order of Court requiring the submission of discovery answers, had occurred.

74. Tarasi and Kenny knew or about May 12, 2006, but in any event, prior to May 31, 2006, the Superior Court affirmed the trial court's granting of the Non-Pros Judgment, that the dismissal of the MG&W lawsuit, as a sanction for failing to comply with an Order of Court requiring the submission of discovery answers, had occurred.

75. Upon information and belief, Tarasi and Kenny in 2003 and/or up to and through May 30, 2006, knew facts upon which a reasonable lawyer having possession of those facts would have reason to believe that a breach of a professional duty occurred concerning their representation of the Sahutsky's in the lawsuit against MG&W.

76. Based on facts known to Tarasi and Kenny, a reasonable attorney knew or reasonably should have known the facts, events and circumstances from July, 2003 to May 30, 2006, could reasonably support a professional negligence claim prior to the effective date of the MLM claims-made liability policy, May 31, 2006.

77. Because the facts, events and circumstances of Tarasi and Kenny's representation of the Sahutsky's, as set forth above, a claim for professional negligence could have been reasonably supported prior to the effective date, May 31, 2006, of the policy under which the claim was reported. As such no coverage for the claim is owed.

78. In the alternative, the Sahutsky's allege knowingly and intentional actions and/or misrepresentation on the part of Tarasi and Kenny (See Exhibit F, Paragraph 13, 14, 15, second paragraph 14, second paragraph 15, 16, 17, 18, 19, 20(d), 20(e), 20(h), 25, 26, and 27) which are excluded from coverage pursuant to exclusion (1) of the policy.

WHEREFORE, Plaintiff, Minnesota Lawyers Mutual Insurance Company, hereby requests the following declarations:

      a).    Tarasi & Tarasi, P.C. and/or Tarasi, Tarasi & Fishman, P.C., is not entitled to a defense or indemnity of the Janice and Robert Sahutsky lawsuit, pending in the Court of Common Pleas of Northumberland County, CV07-2240, under Policy No. 810804 issued by Minnesota Lawyers Mutual Insurance Company;

      b).    C. William Kenny, Esquire, is not entitled to a defense or indemnity of the Janice and Robert Sahutsky lawsuit, pending in the Court of Common Pleas of Northumberland County, CV07-2240, under Policy No. 810804 issued by Minnesota Lawyers Mutual Insurance Company;

WHEREFORE, Plaintiff Minnesota Lawyers Mutual Insurance Company respectfully requests a declaratory judgment be entered in its favor declaring that no coverage obligations are owed by it to Tarasi, Tarasi & Fishman, P.C., Tarasi & Tarasi, P.C. and William C. Kenny, Esq.

    Respectfully submitted,

    BURNS, WHITE & HICKTON

    BY: _____
    John B. Cromer, Esquire

        BURNS WHITE & HICKTON., LLC
        Four Northshore Center
        106 Isabella Street
        Pittsburgh, PA 15222
        412-995-3000

        Jeffrey S. Adler, Esquire
        BURNS WHITE & HICKTON., LLC
        100 Four Falls, Suite 515
        1001 Conshohocken State Road
        West Conshohocken, PA 19428
        484-567-5700